IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-424-D

| | | |
|---|---|---|
| PHILLIP ROY BARBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Phillip Roy Barbee ("plaintiff" or, in context, "the claimant")
challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W.
Colvin ("Commissioner") denying his application for supplemental security income ("SSI") on
the grounds that he is not disabled. The case is before the court on the parties' respective
motions for judgment on the pleadings (D.E. 23,[1] 25). Each party filed a memorandum in
support of its motion (D.E. 24, 26), and plaintiff filed a response (D.E. 28) to the
Commissioner's motion. The motions were referred to the undersigned Magistrate Judge for a
memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 27). For
the reasons set forth below, it will be recommended that plaintiff's motion be granted, the
Commissioner's motion be denied, and this case be remanded for further proceedings.

---

[1] The motion is entitled "Plaintiff's Motion for A Judgment Reversing or Modifying the Decision of the
Commissioner of Social Security, or Remanding the Case for a Rehearing." (Pl.'s Mot. 1).

I.      CASE HISTORY

A.      The 2009 ALJ Decision

Plaintiff filed applications for Social Security disability benefits and SSI on 3 May 2007, alleging a disability onset date of 30 November 2006.  Transcript of Proceedings ("Tr.") 79.  On 6 November 2009, an administrative law judge ("ALJ") issued a decision ("2009 decision") denying plaintiff's applications, finding that he was not under a disability from the alleged onset of disability through the date of the decision.  Tr. 79-88.  Plaintiff requested review by the Appeals Council (Tr. 131) in light of new evidence—the 10 December 2009 medical opinion of plaintiff's treating physician Robert J. Wilson, M.D. (Tr. 97, 464-65).  The Appeals Council admitted this additional evidence into the record, but denied the request on 2 July 2010.  Tr. 93-97.  Because plaintiff did not appeal, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

B.      The 2014 ALJ Decision

Plaintiff thereafter filed, on 11 January 2012, an application for SSI that is the subject of the instant proceeding, alleging a disability onset date of 7 November 2009, the day following the issuance of the 2009 decision.  Tr. 28.  The application was denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 28.  On 25 September 2013, a hearing was held before an ALJ different from the ALJ who issued the 2009 decision, at which plaintiff and a vocational expert testified.  Tr. 47-75.  The ALJ issued a decision denying plaintiff's claim on 31 January 2014 ("2014 decision").  Tr. 28-42.  Plaintiff timely requested review by the Appeals Council.  Tr. 17.  The Appeals Council allowed additional evidence—the 1 October 2013 medical source statement ("MSS") of treating physician Tara O'Brien, M.D. (Tr.

670-72) and a 14 March 2014 letter from Christopher Edwards, Ph.D. regarding plaintiff's pain management treatment at the Duke Pain and Palliative Care Clinic (Tr. 673)—but denied the request on 22 May 2014 (Tr. 1-5). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 25 July 2014, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

## II.    STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis.  *Pass*, 65 F.3d at 1203.  The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy.  *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 416.923.  If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process.  *Id.*

## III.    FINDINGS OF THE ALJ

Plaintiff was 47 years old on the date that the application was filed and 49 years old on the date of the administrative hearing.  Tr. 40 ¶ 6.  The ALJ found that he has a limited education

education and past relevant work as owner/operator of a trucking company, truck driver, and mechanic.  Tr. 40 ¶¶ 5, 7.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the 11 January 2012 application date.  Tr. 30 ¶ 1.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  major depressive disorder, anxiety disorder, cervical and lumbar pain, obesity, and a history of myocardial infarction.  Tr. 30 ¶ 2.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings.  Tr. 30-31 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b)—that is, lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds—with limitations.  Tr. 32 ¶ 4; *see* 20 C.F.R. § 416.967(b).[2]  The limitations are as follows:

> [T]he claimant is limited to frequent climbing, kneeling, crouching, and crawling with no limitations on balancing; the claimant is limited to short simple instructions and while he is unable to maintain two hours of uninterrupted concentration, he can maintain attention to perform short and simple tasks on a repetitive basis during an eight-hour period with infrequent contact with coworkers, supervisors, and the public in a relatively unchanged work setting and process.

Tr. 32-33 ¶ 4.

Based on her determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work.  Tr. 40 ¶ 5.  At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of

---

[2] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot htm (last visited 7 August 2015).  "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT.  *See* 20 C.F.R. § 416.967.

assembler, cleaner, and inspector. Tr. 41 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled from 11 January 2012, the application date, through 31 January 2014, the date of her decision. Tr. 42 ¶ 10.

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

### I. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that this case should be remanded for the award of benefits or, alternatively, for a new hearing pursuant to sentence four of § 405(g) on the grounds that the ALJ erred by: (1) improperly evaluating the medical opinion evidence; (2) failing to give appropriate weight to findings made by the ALJ in the 2009 decision; (3) failing to properly determine plaintiff's RFC; and (4) incorrectly finding that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Because the court finds the issues of the ALJ's handling of the medical opinion evidence, specifically the opinions of Dr. Wilson, and the failure

to adequately address the 2009 decision is dispositive of this appeal, it addresses below only those issues.

## II.     THE ALJ'S FAILURE TO DISCUSS THE OPINIONS OF DR. WILSON

### A.     Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled.  *See id.* § 416.927(b); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").  The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996).  Otherwise, the opinions are to be given significantly less weight.  *Craig*, 76 F.3d at 590.

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source.  *See* 20 C.F.R. § 416.927(d); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996).  But these opinions must still be evaluated and accorded appropriate weight.  *See id*. at *3.

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the opinion of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

**B.     Analysis**

Plaintiff contends that remand is required because the ALJ failed to indicate, expressly or otherwise, the weight she accorded to the medical opinions of Dr. Wilson.  The court agrees.

Dr. Wilson, an orthopedist, treated plaintiff for chronic musculoskeletal pain for more than two years, starting no later than 24 September 2007[3] and continuing until 10 December 2009.  During this period, Dr. Wilson saw plaintiff on 23 occasions.  Tr. 392-479.  Two of Dr. Wilson's treatment records, dated 11 September 2009 and 10 December 2009, include his medical opinion relating to plaintiff's limitations.  On 11 September 2009, Dr. Wilson opined as follows:

> [Plaintiff] has diffuse musculoskeletal problems as documented objectively in his medical records including past MRI cervical, thoracic, lumbar spine.  EMG[4] findings of carpal tunnel syndrome and degenerative arthritis both knees. Currently I believe he does not have the functional capability of full time work even in sedentary activity.  This combined with his heart problems as well as his

---

[3] It appears that Dr. Wilson treated plaintiff for a longer period because the first treatment record included in the record, dated 24 September 2007, indicates that it was not plaintiff's first visit to Dr. Wilson.  Tr. 392 (Dr. Wilson noting that plaintiff "*returns* with diffuse musculoskeletal pain" (emphasis added)).

[4] "EMG" refers to electromyography, which is the testing of the electrical activity associated with a functioning muscle for the diagnosis of neuromuscular disorders and other purposes.  *See* entry for "electromyograph," MedlinePlus Dictionary, http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm (last visited 7 August 2015).

psychosocial issues and problems really I think put him in a category likely of disability.

Tr. 460. On 10 December 2009, Dr. Wilson noted that his opinion regarding plaintiff's limitations was unchanged, stating:

> He has multiple documented physiological and psychological problems as noted. These notably include diffuse cervical, thoracic, lumbar spondylosis with chronic pain, carpal tunnel syndrome with, significant degenerative arthritis and pain both knees, heart disease, and psychosocial factors. All of these combined, I think, make his ability to be employed on a full time basis very unlikely. Even sedentary activity would be difficult as it would involve upper extremity cumulative trauma aggravating his carpal tunnel syndrome and any prolonged sitting would aggravate his spine problems. Any standing, walking activities would likely aggravate his knee problems. Combined I do not think he has the capability of full time employment.

Tr. 465.

In her decision, the ALJ makes no reference to Dr. Wilson's opinions, much less explain what, if any, weight she accorded them and why. The ALJ's failure to indicate, either explicitly or otherwise, the weight she accorded these opinions and the reasons for such weight precludes the court from conducting a meaningful review of the ALJ's decision. This case should accordingly be remanded. *See Ladson v. Astrue,* No. 4:11-2565-TER, 2013 WL 655971, at *9 (D.S.C. 22 Feb. 2013) (remanding case for ALJ to address opinions of plaintiff's treating physicians and explain weight accorded thereto); *Wilson v. Astrue*, No. 4:11cv102, 2012 WL 4717873, at *13 (E.D. Va. 1 Oct. 2012) (remanding case where ALJ did not adequately explain reasoning for giving medical opinion only "slight evidentiary weight"); *Hampton v. Astrue,* No. 5:11–698–TMC, 2012 WL 3715941, at *2 (D.S.C. 28 Aug. 2012) ("While the Commissioner argues that the residual functional capacity determined by the ALJ was not inconsistent with portions of [the treating physician's] opinions, the ALJ, while stating that he did not give [the treating physician's] opinions controlling weight, failed to explain what weight, if any, was given

to [the treating physician's] opinions as required. Accordingly, a remand for further proceedings is necessary."); *Mandycz v. Astrue*, No. SAG–10–2287, 2011 WL 5515489, at *2 (D. Md. 9 Nov. 2011) (remanding where ALJ expressly considered the medical opinions in plaintiff's file but failed to indicate weight given to the opinions).

Defendant argues that the ALJ was not required to address Dr. Wilson's opinions because they were generated more than two years before the date that plaintiff filed his application for SSI benefits. Defendant is correct that plaintiff was required to establish that he was under a disability on 11 January 2012, the date of his SSI application. In his application, of course, plaintiff alleged a disability onset date of 7 November 2009 (Tr. 28), the date following the issuance of the first ALJ decision. Dr. Wilson's 10 December 2009 opinion postdates the alleged onset of disability. Perhaps more significantly, Dr. Wilson's opinions address chronic conditions that other medical records confirm plaintiff continued to have after the date of his application. *See, e.g.,* Tr. 670 (1 Oct. 2013 MSS of Dr. O'Brien listing diagnoses of chronic back pain syndrome, cervical radiculopathy, lumbar facet arthropathy, and fibromyalgia). Thus, Dr. Wilson's opinions are relevant to whether plaintiff had chronic, potentially disabling impairments during the period covered by the ALJ's decision.

Defendant also asserts that Dr. Wilson's opinions were entitled to no weight because they were "conclusory" and on the ultimate issue of disability reserved to the Commissioner. Defendant's assertion is without merit. First, these opinions clearly consist of more than a mere opinion as to whether plaintiff was "disabled." *See* 20 C.F.R. § 416.927(d)(1) (providing that a medical source's opinion that a clamant is "disabled" or "unable to work" will not be given special significance). As plaintiff notes, Dr. Wilson's opinions expressly identify the underlying impairments (*i.e.*, "diffuse cervical, thoracic, lumbar spondylosis with chronic pain, carpal tunnel

syndrome with[] significant degenerative arthritis and pain both knees, heart disease, and psychosocial factors") and the relationship between these impairments and plaintiff's physical limitations (*e.g.*, "sedentary activity would be difficult as it would involve upper extremity cumulative trauma aggravating his carpal tunnel syndrome"; "prolonged sitting would aggravate his spine problems"; "[a]ny standing, walking activities would likely aggravate his knee problems"). Tr. 465. Further, Dr. Wilson cites to specific objective medical evidence supporting his conclusions, including MRIs of plaintiff's cervical, thoracic, and lumbar spine and EMG studies showing carpal tunnel syndrome and degenerative arthritis in both knees. Tr. 460.

Nevertheless, even if Dr. Wilson's opinions were deemed to address only the ultimate issue of disability, the ALJ was still required to evaluate them and state the weight she accorded them. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). For this and the other reasons stated, this case should be remanded for proper evaluation of the opinions of Dr. Wilson.

## III. THE ALJ'S FAILURE TO GIVE APPROPRIATE WEIGHT TO FINDINGS MADE BY THE ALJ IN THE 2009 DECISION

### A. Applicable Legal Standards

The ALJ is required to consider the findings contained in a prior final decision of the Commissioner in determining disability in a subsequent application involving an unadjudicated time period. *Albright v. Comm'r of the Soc. Security Admin.*, 174 F.3d 473, 477-78 (4th Cir. 1999) (explaining that the justification for this requirement was that "[t]o have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—

that final agency adjudications should carry considerable weight"); *see also Carter v. Astrue*, Civ. Act. No. CBD-11-2980, 2013 WL 4461579, at *5 (D. Md. 19 Aug. 2013) ("When the Commissioner seeks to reverse its conclusions as to 'important and probative' facts required by the sequential evaluation process, it must demonstrate how its subsequent finding is supported by substantial evidence." (quoting *Albright*, 174 F.3d at 477-78)). An ALJ is "not bound to adopt those findings verbatim but must consider the prior findings and assign a weight to such findings." *Manuel v. Colvin*, No. 1:11CV8, 2015 WL 519481, at *5 (M.D.N.C. 9 Feb. 2015) (citing *Albright*, 174 F.3d at 477-78). "The *Albright* court indicates that an ALJ should consider and evaluate the findings of any prior ALJ as they relate to the decisions before the current ALJ, but falls far short of requiring comment on those prior findings." *Melvin v. Astrue*, No. 5:06-CV-314-D, 2007 WL 6004178, at *7 (E.D.N.C. 10 Oct. 2007), *rep. & recommendation adopted by* 602 F. Supp. 2d 694 (2009).

Social Security Acquiescence Ruling 00-1(4) sets forth the following requirements for assessing the weight due a prior final decision:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Soc. Sec. Acquiescence R. 00-1(4), 2000 WL 43774, at *4 (12 Jan. 2000) ("AR 00-1(4)").

### B. Analysis

Plaintiff asserts that the ALJ failed to properly consider the findings contained in the 2009 decision as required by *Albright*, specifically those contained in the RFC determination. Like the RFC in the 2014 decision, the 2009 decision found that plaintiff had the RFC to perform light work. Tr. 83 ¶ 5. However, the 2009 decision included the limitations of "a sit/stand option at will, using . . . upper extremities on a frequent but not constant basis." Tr. 83 ¶ 5. As previously described, the RFC determination in the 2014 decision does not include a "sit/stand option," but rather finds that plaintiff is capable of "sitting, standing, and walking six hours each in an eight-hour workday." Tr. 32 ¶ 4. Nor does it include any upper extremity limitations. Tr. 32 ¶ 4. The 2014 decision provides no explanation as to why plaintiff no longer requires either the sit/stand option or upper extremities limitation. In fact, aside from initially acknowledging the existence of the 2009 decision in the "Jurisdictional and Procedural History" section at the beginning of the decision (*see* Tr. 28), the ALJ does not discuss or make any reference to any of the findings in the 2009 decision.[5]

The ALJ's failure to explain how, or even whether, she determined that plaintiff's conditions had improved since the 2009 decision precludes meaningful review by the court of the ALJ's decision. The lack of explanation is material in this case because the impairments underlying these limitations are chronic and degenerative in nature. By November 2007, plaintiff had been diagnosed with multilevel degenerative disc disease in both the lumbar and

---

[5] The court notes that each of the two state agency nonexamining consultants, Hari Kuncha, M.D. and Pamela Jessup, M.D., listed the 2009 decision as "other opinion" evidence that was considered in making their disability determinations. Tr. 100-01, 118. Specifically, in a 23 March 2012 determination, Dr. Kuncha stated that "[a]ppropriate consideration and weight given to prior findings pursuent [sic] to the Albright AR dated 11/6/2009. Findings indicate the clmt has the [RFC] to perform light work. Albright applied." Tr. 103. He went on to conclude, "ALJ decision is given great weight as findings are fairly consistent with addl and current evidence in file." Tr. 106. In a 1 August 2012 determination, Dr. Jessup reached the same conclusion. Tr. 123. While the ALJ gave great weight to the opinions of these consultants that plaintiff could perform light work with certain exertional limitations, this does not otherwise indicate the weight the ALJ, herself, afforded the 2009 decision.

cervical spine, facet degenerative joint disease of the lumbar spine, a cartilage defect of the left knee, and bilateral upper extremity pain with a history of carpel tunnel syndrome. Tr. 399, 468-71. Without a discussion by the ALJ of why these chronic conditions no longer require the limitations found by the previous ALJ, the court cannot conclude that the decision is supported by substantial evidence.[6]

The court's difficulty is pointedly illustrated by a review of the medical opinion evidence relating to plaintiff's physical limitations. For example, regarding the need for a sit/stand option, the only medical opinions in the record that would support the elimination of the sit/stand option are those of the two state agency nonexamining consultants, who each found plaintiff to be capable of sitting, standing, and walking for 6 hours in an 8-hour day. Tr. 107, 124. All other medical opinions in the record support plaintiff's continued need for a sit/stand option.

As previously discussed, on 10 December 2009, Dr. Wilson concluded that "prolonged sitting would aggravate [plaintiff's] spine problems. Any standing, walking activities would likely aggravate his knee problems." Tr. 465. Ernest B. Eason, M.D., an examining consultant who evaluated plaintiff on 19 July 2012, concluded that "it is unlikely that [plaintiff] [can[7]] do

---

[6] The court recognizes that a decision's lack of express discussion on the findings of a prior final decision is not necessarily dispositive of whether the requirements of *Albright* have been met. *See Melvin*, 2007 WL 6004178, at *7. However, this case is distinguishable from *Melvin*. As in the instant case, the plaintiff in *Melvin* was found to have several severe impairments that are chronic in nature: mild lumbosacral disc disease/myofascial pain syndrome, mild chronic obstructive pulmonary disease, depression, and history of substance abuse. *Id*. at *2. On appeal, the court concluded that, though there was no specific discussion of the prior ALJ decision, it had been appropriately considered because the current ALJ's decision was consistent with it. *Id*. at *8. Specifically, the court explained that "the prior ALJ found that Claimant had an RFC for medium work activity, which was not precluded by his past relevant work," and that "[f]our years later, the current ALJ found that Claimant's impairments had worsened and he only had the RFC for light work activity which precluded him from performing his past relevant work." *Id*. (emphasis added). Unlike in *Melvin*, the ALJ here did not conclude that plaintiff's chronic conditions had worsened, but rather, in effect, that plaintiff's chronic conditions had improved. Such an implicit determination of improvement since the prior ALJ's decision, contrary to the nature of the underlying conditions, requires explanation.

[7] In his report, Dr. Eason actually uses the word "cannot" in this statement. Tr. 340. However, it is clear from the context of the report that he meant that plaintiff is unable to do prolonged sitting. While the ALJ repeats the statement in her decision with the word "cannot" (Tr. 38), it is not clear from her discussion of Dr. Eason's opinion what meaning she gave to it.

15

prolonged sitting for more than 10 minutes at a time without having to move or get fidgety nor could he stand or walk more than 10 minutes." Tr. 340. Alan Sirk, P.T., the physical therapist who performed a functional analysis of plaintiff on 17 September 2013 at the request of Dr. O'Brien,[8] found plaintiff's functional tolerance for standing and walking to be occasional or less than occasional and for sitting to be occasional. Tr. 654. Finally, Dr. O'Brien, who began treating plaintiff in June 2013 (Tr. 628), opined that he could sit, stand, or walk for less than 2 hours in an 8-hour work day. Tr. 670.

The court finds the same problem with respect to the ALJ's elimination of the upper extremity limitation from plaintiff's RFC. With the exception of Dr. Eason, the opinions of all treating and examining medical sources found plaintiff to have upper extremity limitations. Dr. Wilson concluded that "[e]ven sedentary activity would be difficult as it would involve upper extremity cumulative trauma aggravating his carpal tunnel syndrome." Tr. 465. Mr. Sirk found plaintiff to have functional tolerances in lifting, carrying, pushing, pulling, reaching forward, handling, and fingering of either occasional or less than occasional. Tr. 654. Dr. O'Brien concluded that plaintiff would rarely be able to reach overhead in a competitive work situation. Tr. 671. While Dr. Eason did not make any specific finding regarding upper extremity limitations (*see* Tr. 340), during his physical examination of plaintiff, he found plaintiff's shoulders to have "[d]ecreased muscle mass in the deltoids bilaterally" and "[a]bduction and

---

[8] The court notes that the ALJ gave Mr. Sirk's opinion "less weight" on the grounds that "it was not given by an acceptable medical source and it was not endorsed by a doctor." Tr. 38. While Dr. O'Brien, who referred plaintiff to Mr. Sirk for the evaluation, did subsequently endorse the opinion in her 1 October 2013 MSS (Tr. 672), the ALJ did not have this MSS at the time she issued her decision. Accordingly, on remand, the ALJ should reconsider the weight given to Mr. Sirk's opinion in light of its endorsement by Dr. O'Brien. The court also notes that the ALJ misstated Mr. Sirk's recommendation regarding whether further testing of plaintiff was needed. The ALJ states that Mr. Sirk "felt that an additional testing time on a separate day was warranted" (Tr. 38), but, in fact, Mr. Sirk stated, "[I]t is *not* felt that additional testing time (on a separate day) is warranted" (Tr. 655) (emphasis added). On remand, the ALJ should obviously consider Mr. Sirk's opinion as he actually stated it.

elevation to 140 degrees, backward elevation 40 degrees"; 150 degrees of flexion in the elbows; and motor strength at the C7 of 4/5 (Tr. 339).

This case should accordingly be remanded for proper consideration of the RFC limitations in the 2009 decision in accordance with the requirements of *Albright* and AR 00-1(4). *See Manuel*, 2015 WL 519481, at *5 (remanding where ALJ found plaintiff able to do past relevant work but failed to provide any discussion regarding the prior ALJ's finding that plaintiff was unable to do past relevant work); *Carter*, 2013 WL 4461579, at *7 (remanding due to ALJ's failure to explain how plaintiff's medical condition had improved such that it warranted a finding that she could do past relevant work despite a prior ALJ decision to the contrary).

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 23) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 25) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation. In making this recommendation, the court expresses no opinion on the weight that should be accorded any piece of evidence, matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 21 August 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further

evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of objections, but in no event later than 4 September 2015.

This 7th day of August 2015.

James E. Gates
United States Magistrate Judge